


**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed December 30, 2009**  **United States Bankruptcy Judge**

___

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CAROL W. BANNER, | § | CASE NO. 07-36318-BJH-13 |
| | § | |
| Debtor. | § | |
| | § | |
| CAROL W. BANNER, | § | |
| | § | |
| Plaintiff, | § | ADV. PRO. 08-3460-BJH |
| - against - | § | |
| | § | |
| ABF FREIGHT SYSTEM, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment (the "Motion") filed by Defendant ABF Freight System, Inc. ("Defendant" or "ABF"). The Court heard the Motion and a cross-motion

for summary judgment (the "Cross-Motion") filed by Plaintiff Carol W. Banner ("Debtor" or "Banner") on September 21, 2009. At the conclusion of that hearing, the Court denied the Cross-Motion for the reasons stated on the record and took the Motion under advisement. Thereafter, the parties filed further briefs regarding the Motion.

This proceeding arises under the Bankruptcy Code and the Court has core jurisdiction over the Motion in accordance with 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion contains the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## I. FACTUAL BACKGROUND

The following facts are, except where noted, largely undisputed. Banner began working for ABF as a sales representative in October, 2006. ABF is a freight transportation company operating all over the United States and in both Canada and Puerto Rico. ABF employed Banner at its facility in Dallas, Texas. All sales representatives at ABF were required to qualify for, obtain and maintain an American Express ("Amex") corporate card in order to pay for work-related expenses for customer entertainment and travel. Banner qualified for and obtained such a card, which was issued in her name, and she was responsible for the payment of all charges to the card.

In January of 2008, Banner tried to pay for a client's lunch with the Amex card, but the charge was refused. Banner contacted her sales manager, Cam Hill ("Hill"), and told him she had filed for bankruptcy in December of 2007 but "did not list the company card on [her] bankruptcy filing." *Pl.'s App.*, p. 117. This was the first notice that ABF had that Banner had filed for bankruptcy.

Banner then called American Express, which told Banner that it had cancelled the card because a credit check had revealed that Banner had filed for bankruptcy. *Pl.'s App.*, p. 127. In fact,

Banner's Amex card was cancelled because she filed for bankruptcy. *Pl.'s App.*, p. 105.

ABF asserts that after being notified of the cancellation of Banner's Amex card, her supervisors and several other management personnel reviewed Banner's performance and tenure to determine whether an exception should be made to ABF's Amex policy. Based on a review of her job performance and tenure, ABF determined not to make an exception to the policy and guarantee the card, but decided instead to terminate Banner's employment. *Pl.'s App.*, p. 32. ABF told Banner at the meeting at which she was terminated that "based on [your] recent bankruptcy filing causing [your] American Express card to be cancelled and reinstatement not being an option, we regretfully have no choice but to end your employment with ABF." *Pl.'s App.*, pp. 49, 79, 102.

On 13 occasions since 2005, ABF has guaranteed an Amex card, with spending restrictions, for individuals whose Amex credit card application was declined due to a prior bankruptcy. On 3 occasions since 2005 (excluding Banner), ABF terminated the employment of employees who violated its Amex policy when their Amex cards were suspended. *Pl.'s App.*, p. 107.

Banner asserts that the sales performance she achieved during her tenure was influenced by the fact that she "was a relatively new employee who was still learning her position, that the territory had been vacate for approximately two years; that her supervisor overloaded her territory with more accounts than she could productively handle; and that the territory had been stripped of its major accounts." *Brief in Supp. Of Pl.'s Resp. To Def.'s Mot. For Summ. J.*, p. 8.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

In deciding a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[1] In deciding whether a fact issue has been raised, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial. *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.") (citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 135 (2000)); *see also U.S. v. An Article of Food Consisting of 345/50 Pounds Bags*, 622 F.2d 768, 773 (5th Cir. 1980) (holding district court erred in "discounting evidentiary value." When determining whether a genuine issue of any material fact exists, the court "should not proceed to assess the probative value of any of the evidence . . . ."). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pylant v. Hartford Life and Acc. Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party makes an initial showing that there is no evidence to support the non-moving party's case, the non-moving party must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

**B.  Has Debtor Raised a Genuine Issue of Material Fact?**

---

[1] Federal Rule of Civil Procedure 56 is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.

**Memorandum Opinion and Order**  **Page 4**

This is an action under the anti-discrimination provision of the Bankruptcy Code, 11 U.S.C. § 525(b), which provides that "[n]o private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title . . . *solely because* such debtor . . . (1) is or has been a debtor under this title . . . ." Thus, in order to survive the Motion, the Debtor must present sufficient evidence to demonstrate that a material issue of fact exists as to whether ABF's *sole reason* for terminating the Debtor's employment was her bankruptcy filing. *Stockhouse v. Hines Motor Supply, Inc.*, 75 B.R. 83, 85 (D. Wyo. 1987). For the reasons explained more fully below, the Court concludes that the Debtor has failed to do so and, accordingly, the Motion must be granted.

ABF contends that there were two reasons for the Debtor's termination – *i.e.*, the Debtor's (1) failure to comply with ABF's policy that its sales representatives qualify for and maintain an American Express card for use in their sales and marketing efforts, and (2) poor job performance. As relevant here, the evidence is undisputed that there were problems with the Debtor's job performance. These problems were reflected in various ABF Monthly Sales Audit Reports ("MSARs"), which contained criticisms of the Debtor's performance. *See, e.g.*, *Def.'s App*. Ex. A-6 at pp. 63-66; pp. 70-72. Moreover, ABF's summary judgment evidence includes various charts and graphs comparing the Debtor's performance to the performance of other sales representatives in ABF's Dallas branch. *See Def.'s App*. Ex. A-19-A22 at pp. 391-94. These charts and graphs demonstrate that the Debtor's performance in her 15 months of employment with ABF was significantly worse than any other sales representative during the same time period.

In response, the Debtor contends that she was terminated solely because of her bankruptcy filing, which caused American Express to cancel her card and her to violate the ABF policy. In short,

the Debtor contends that ABF has concocted a second reason for her termination – *i.e.*, her poor job performance, in order to avoid liability under § 525(b) of the Bankruptcy Code. Moreover, in response to ABF's summary judgment evidence of her poor job performance, the Debtor points to certain comments made by Hill, her immediate supervisor, in certain of the MSARs, which were more positive about her performance and encouraged her to continue to develop her skills in order to better penetrate her territory. *See, e.g., Pl.'s App.*, pp. 148, 200. In addition, the Debtor relies on Hill's deposition testimony that on January 15, 2008, the day ABF terminated her, Hill did not believe that she should be terminated for her poor performance.[2] The Debtor also offers various explanations for her poor performance, including that her assigned territory remained unoccupied for two years prior to her employment. *Pl.'s App.*, pp. 94, 95, 256. Finally, the Debtor's summary judgment evidence establishes that she was never told that she was at risk of being fired due to her poor performance, or that she was being fired due to her poor performance. *Pl.'s App.*, pp. 70, 105, 113, 243, 258.

While the Debtor's summary judgment evidence certainly suggests that her job performance was not as bad as ABF contends, she has failed to present any summary judgment evidence demonstrating that her job performance was problem free. In other words, while the extent of the Debtor's performance problems are in dispute in the summary judgment record, there is no dispute in the summary judgment record that the Debtor's job performance was problematic and that ABF's Director of Human Resources, Dan Griesse, and ABF's Regional Vice President of Sales, John Evans, evaluated her performance in concluding that (1) ABF would not guarantee the Debtor's

---

[2]According to his deposition testimony, Hill thought the Debtor should be placed on a performance improvement plan that would result in her termination if her performance did not improve. Hill Depo, 87:9-21, App. Exhibit B at p. 400.

Amex card, and (2) the Debtor should be terminated. *Def's App.*, pp. 435, 438, 439, 450.

The Debtor cites several cases for the proposition that an employer's evolving explanation for an employee's termination may raise a genuine issue of material fact, sufficient to defeat the Motion. *See, e.g., Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408 (5th Cir. 2007); *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002). However, those cases were decided in the context of claims under Title VII of the Civil Rights Act of 1964. In that context, the law is well-developed that in cases involving circumstantial evidence of discrimination, there is a shifting burden of proof on a motion for summary judgment. In such a case, a plaintiff must demonstrate a prima facie case of discrimination; if the plaintiff does so, then the defendant must articulate a legitimate, non-discriminatory reason for the termination. If the defendant meets this burden, then the plaintiff must offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that "the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell*, 482 F.3d at 411-412.

However, as relevant here, courts have generally rejected the notion that this sort of burden-shifting, made applicable in the Title VII context as described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to cases brought under § 525(b) of the Bankruptcy Code. *See, e.g. White v. Kentuckiana Livestock Market, Inc.*, 397 F.3d 420, 426 (6th Cir. 2005); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 22 (1st Cir. 1989). Moreover, the Title VII cases are distinguishable, because Title VII permits recovery where one motivating factor (among possibly several) for the adverse action is the plaintiff's protected characteristic. Section 525(b) is not so forgiving, and Banner must instead raise a genuine issue of fact that the *sole* motivating factor causing her

termination is her bankruptcy filing.

Here, the evidence is undisputed that Amex cancelled Banner's card because she filed for bankruptcy, and that ABF terminated Banner because she did not maintain an Amex card.[3] However, it is also undisputed that in making its decision to terminate Banner, ABF considered whether it should make an exception to its policy by guaranteeing Banner's Amex card, as it had done many times in the past for other employees, but that it determined not to do so based upon a review of Banner's tenure and job performance. And, as noted previously, Banner's job performance was problematic. Therefore, because the Debtor has failed to raise a genuine issue of material fact that the *sole* reason for her termination was her bankruptcy filing, the Debtor's claim under § 525(b) fails as a matter of law. Accordingly, the Motion must be granted.

A separate judgment shall be concurrently entered.

**SO ORDERED.**

### End of Memorandum Opinion and Order ###

---

[3] The Court expresses no view on whether an employer could establish a policy to terminate employees which could be triggered only by the filing of a bankruptcy, and then escape § 525(b) liability by claiming that it was the violation of the policy, and not the bankruptcy filing, which caused the termination. That is not the case before the Court. First, an employee could fail to qualify for, or fail to maintain, an Amex card for reasons other than bankruptcy. Second, it is undisputed in this case that ABF did not terminate all employees who lost or were unable to obtain an Amex card due to a bankruptcy filing.